and others. Arguments not to receive 15 minutes per side. Mr Bostic for the appellant. Thank you. Thank you. Good morning, Your Honors. Nick Bostic on behalf of the plaintiff. I would like to reserve six minutes for rebuttal. That's a lot of time. But if that's what you want to do. The first point I would like to make, obviously, is to focus on the three elements of the First Amendment claim. The primary one that, of course, was addressed by the district court was whether or not the plaintiff engaged in protected activity. I don't know if the record is really muddied or if it's been muddied up. Perhaps I should have done a better job in the complaint. But the protected activity is not the release. There's references repeatedly that she claims to have a right to release the video. The right is the protection from retaliation. And that's how I hope that I've made it clear in the briefing that that is our claim. Well, I guess along the same lines or as a threshold matter, I'm struggling to understand what the speech is here. Is there a case that says releasing confidential information speech? Well, as a threshold matter, I don't necessarily agree that it's confidential information. It would probably be subject to the Freedom of Information Act. Because it's a combined system that's used by the executive branch and the judicial branch in that particular building, I think that's probably a matter that would end up having to be litigated long and hard by the courts. But the executive controls it and possesses the IT equipment on which it's stored. Now, to the merits of your question, I believe that the cases I put in my brief concerning recordings and the right to record police activity out in the public and things of that nature, that's what I was trying to persuade you that, yes, there is authority that the recordings are expressive activity when they are sent out in the context of informing the public. Well, I mean, I understand. I guess you could try to make inferences about that. But, I mean, I just don't – it's not clear to me why we should treat this as speech. And moreover, I mean, the implications of this are significant. I mean, it kind of amounts to – I know – I understand your point that you don't think it's confidential. Maybe so. But it seems almost to amount to the assertion of a constitutional right to leak. And, I mean, imagine the implications of that for, say, the federal executive branch. That every time they want to feed something to the Washington Post or the Wall Street Journal or something, that that branch cannot police that activity and fire people because it's a constitutional right. Is that the situation? Is that the road we're going down? Well, it's an awful lot easier when it's employer-employee. There's no doubt that it's a lot easier because I think the law is quite clear that the employer's activity, retaliatory activity, if you want to use that label, are not unconstitutional. But that's easy because it's employer-employee. I mean, whether you look at Garcetti or dozens of other cases, it's quite clear. Well, I mean, I just wonder if the court should say, you know what, I mean, this isn't speech to begin with. Leaking is not speech. It might prompt speech by somebody else, but itself it's not speech. And so we're not going to treat it as speech for this purpose. I'll relent having said that. You can say whatever you want. Right. I don't – I mean, it's not an academic question, but it's do we view it that way. And that is your job, not mine. Mine is to advocate that there's law that applies, and hopefully I did that in my 14,000 words. Well, let me ask you a follow-up question. Do you have any proof that either of these defendants were the ones who leaked the information? Direct proof to the media? No. Why not? And then your client in fact admits he doesn't know who leaked. We've never been able to find out who called the media on September 22, 2016. Well, why is that not fatal to your case if you have no proof that these defendants were the leakers? Because in late August 2016, Detective Buckland called the reporter and then the same – got a return call from his editor. And during that – those calls, he disclosed that he was conducting a criminal – well, he didn't say on conducting a criminal investigation, but he called them as a detective. They knew what he was investigating. So – But it had already been leaked by then. No, Your Honor. August 24th, I think, 2016, was when he called the reporter and the editor called him back. September 22 was the press release for the charges against the courtroom attacker and then the day that the media called the special prosecutor. So it was a month later. How do you – the case of our – the Sixth Circuit case called Maddox v. City of Forest Park was a 1999 decision. How do you distinguish that case? I think that was a case where a city council member, you know, was – got in a fuss about problems with the fire department and ended up – and then we said, hey, that's not a, you know, in our city kind of claim of a right to – The release by the councilwoman and the firefighter were to the city council, not to the public. The city council then chose to do what appeared to be a multi-phase investigation, internal and criminal. The criminal investigation, as I read the opinion, focused on a ransacked rescue unit, a lock on a hazardous material truck, and theft of a controlled substance. Obviously, police had potential crimes. In this case, in my case, there was no instruction of justice. That was just simply a label that they wanted to put on it so they could make her look like a criminal. But I thought part of the decision was the idea that, look, this was an elected public official, this city councilwoman, that it's just not the type of harm that she has a cause of action for. I mean, here you're applying for an elected judge, right? Yes, and I'm looking at this in the context of whether it's protected speech. And my reason for distinguishing Maddox is that those two folks aimed their speech at city council, so that was all internal. My client aimed her speech, if you will, to the public, the media. And I think that is a critical difference because that takes us into the First Amendment protections that we all are familiar with that the Supreme Court says you cannot retaliate for. As to the, you know, the brief goes on to a lot of things, my brief. I got surprised in this court once, years ago, by not briefing an issue that a district court didn't rule on but was in the motions. So I know that they raised that in their brief. The reason that I did not do a reply was because it looked to me like we had all been talking about basically the same set of cases in the district court briefing and in the two appellate briefs here. The only three cases they mentioned that I didn't was Weisbarth v. Geoga Park, 499 F. 3rd, 538. I distinguished that by indicating that the officer was talking, the ranger was talking with a consultant in-house to work on morale issues. Whitener v. McWaters is a Fourth Circuit case. That was a legislative immunity case. That's discussed in my brief. And then Hartman v. Register. The plaintiff was counseling. The argument was with the clerk over minutes. That's obviously within his duties. That will conclude my initial comments.  Very good. Thank you, sir. Good morning, Your Honors. May it please the Court. John Glitchy representing the defendants, Gene Brindlesworth, Charles Buckman. The Court seemed very familiar with the facts. I'm certainly not going to spend any time at all really discussing those. I want to focus on what the district court focused on. And that's the fact that in this case, the elected official could not have done any of the things she did as a private citizen. In other words, her ability to disseminate this video owes its entire existence to her official position. That is significant because that is what the federal courts, including the U.S. Supreme Court, have looked at in developing the jurisprudence concerning First Amendment retaliation claims. Which, as the Court is probably well aware, largely has developed through public employment cases. Nevertheless, there are really good, compelling reasons for Garcetti to apply in this type of setting. And by the way, we did point out below, we did argue below, that this release was not speech of any kind. In fact, who knows what the message was in giving this video to the reporter. For all we know, it could have been one person doing a favor for another person so he could have a scoop. We simply don't know. But anyway, it's interesting that Plaintiff's own complaint at paragraph 44 says that her First Amendment activity occurred in both her private capacity and in her official capacity. I don't know how you can do it in both capacities, but at least there's an admission there that this was done in her official capacity. That in and of itself really should sort of end the discussion. She's made other admissions, some of which have already been alluded to, but I wish to mention them as well. She said in her affidavit below, as I think Judge Gilman noted, that we don't know who leaked this to the press. Why are my clients still being charged with doing that? The Plaintiff has said that neither she nor her attorney know who did this. And in fact, both of my clients denied under oath doing this. She also says, and has said below to the District Court, that she has never complained. And I'm hearing this again this morning. I've never claimed that I had a constitutional right to release the tape. Well, I agree that should end all discussion. If there's no constitutional right to do this, there can't be a First Amendment claim that she was retaliated against for doing this. So I really don't know what else I can add other than to say that Garcetti, it's true, developed out of a public employment case. But really, the reasons for applying Garcetti to cases like this are as compelling, if not even more compelling, when it comes to an elected official. Because if we don't have that sort of a standard for an elected official, that would mean that elected officials have greater protection when it comes to speech or leaking than a public employee. Well, that's never been the law. That's never been the jurisprudence of federal courts. Public employees at least have the opportunity to speak on matters of public concern, so long as speaking out on matters of public concern don't disrupt the employer, the public employer's mission to accomplish its lawful goals. But now we're being told we shouldn't even adopt that as a standard, rather just a standard that applies to private citizens, regardless of when, where, and how the elected official engages in protected activity or First Amendment activity. Well, in Garcetti, the United States Supreme Court specifically rejected the Ninth Circuit's rule, which would have required the courts to more or less step in on employment matters and decide, well, did this employee speak on a matter of public concern? And did it compromise the mission of the public employer? Well, it would be even worse if the courts had to get drawn into these political battles when it comes to elected officials, because one elected official claims I was retaliated against by another elected official because of what I had said on some political matter, and that's barred by the First Amendment. The courts would then have to get involved in that sort of dispute, rather than leaving it up to the electorate, which decides these things at the ballot box. And of course, even before Garcetti, and Maddox is a perfect example, and there are others as well, even before Garcetti, federal courts, particularly in the Sixth Circuit, have recognized that elected officials don't have greater protections when it comes to the First Amendment. And have contrasted in their decisions elected officials with public employees, because public employees can get disciplined, they can get fired, they can get demoted, so there should be greater protection for them, unlike an elected official who can't be demoted, who can't be disciplined, who can't be discharged, unless you want to call not being reelected as a formal discharge. So, unless the court has other questions, I will conclude my presentation. Thank you, Your Honor. Your rebuttal. Thank you, Your Honor. In page 44 of my brief is where some of the discussion occurs about whether the video can be speech. I think one of the closest cases that I have in that section is Brandsburg v. Hayes, 408 U.S. 665, which states the proposition that the gathering of news by the press and the public on the affairs of government officials on public property is protected activity. So, to require that we definitely be able to label it as speech might be too narrow. Protected activity is a little broader than just speech. The defense frequently points out that her access to the video and then her, the reporter's access to the video, was a result of her official position. But I disagree that it's appropriate to focus on how the employee accessed it. Is it relevant here that the reporter was asking for it as opposed to the judge just responding to releasing it? Because in my mind, I see the fact that the reporter is going to the judge asking for it to be released. That's a recognition that the judge is in control of a release by Virginia, her job as judge. And that's drawing me towards saying she's acting as a public employee here, not a private citizen. I think if we took the reporter's call out of the equation and she called him or she made a copy of it and took it herself, I think it would make it much easier for everybody to say, well, that's clearly an individual capacity. But I don't think the fact that it developed the way it did allows the law to disregard her own personal concern over courthouse security. In other words, her individual concern and the policy decisions, the actual implementation of courthouse security is not her job. She has an interest in it, just like every other member of the public, but it's not her job. Did this altercation occur in her courtroom or just in a different courtroom in the courthouse where she worked? Two days earlier in an adjacent courtroom. I mean, what if the reporter contacted her as opposed to the judge where the altercation actually occurred? He was new. The judge where he occurred, he was fairly new on the bench at the time. I think this is in the record. A reporter was in the other judge's courtroom when it happened, but then on Wednesday, definitely late on Tuesday, and they put something on their website about a story. I don't think it made the written paper that evening. Well, that reporter, Mr. Mancorini, he wrote the article, but then some people called him and said, you got the facts wrong. So the lady that gave him the information, there was a miscommunication. So Mr. Mancorini wanted to get his story right, so he called the judge to see the video. I'm pretty sure that's in the record. So it was a different reporter than the one who had been present in the courtroom who called for the video tape? Yes. There was a female reporter from the Lancet State Journal in Judge Jameau's courtroom when the attack occurred. She related to Mr. Mancorini, who authored the article. But I guess what I'm thinking is there's nothing in the record indicating that the reporter contacted this judge for any other reason than the fact that this judge was in charge of this or at this courthouse. It just seems to me kind of a logical thing that if you want to get a copy of a tape, video tape of the proceeding, you would contact maybe the judge, contact the clerk. But it just seems like – that seems like a ministerial – they're asking for a ministerial response from either the judge or the clerk. They're acting in an official capacity, and it's not really speech. It's just, here, this is what the rules – I mean, it's like, is it speech every time you ask the clerk for something in the docket by the clerk? So why is that any different than here, where we have a judge who's been asked to give some record of a court proceeding, and the judge gives the record? Well, in Michigan, we have to be very careful about what we call a record of a court proceeding. And I put in either the district court or this brief the administrative rules about what is a court record, and this is not. And I think Chief Judge Lawless agreed with that in her deposition. In my client's deposition, she testified about having some – had communications with Mr. Mincarini previously, so that sparked it. But focusing on the fact that we have to look at context, I think it does fall in speech. My time is up. Questions? Oh, I'm sorry. Thanks for letting me know. Thank you, Mr. Bosco. Thank you very much.